UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TRX INTEGRATION, INC.,

    Plaintiff,

v.                                  Case No. 8:15-cv-880-T-33TBM

STAFFORD-SMITH, INC.,

    Defendant.
_____/

### ORDER

This cause comes before the Court upon two motions for summary judgment. Plaintiff TRX Integration, Inc. moves for summary judgment as to Count I of Defendant Stafford-Smith, Inc.'s Counterclaim and Count II of the Amended Complaint. (Doc. # 58). Stafford-Smith moves for summary judgment as to Counts I and II of the Amended Complaint. (Doc. # 62). Both parties filed their respective responses (Doc. ## 64, 66) and replies (Doc. ## 65, 68). For the reasons that follow, the Court denies both motions for summary judgment.

**I.   Background**

TRX owns and licenses TRX Enterprise™, which is software designed to meet the needs of companies in the food service industry. (Doc. # 50 at ¶¶ 2-3). SSI is a corporation that supplies food-service equipment, such as stoves, cabinets,

1

and walk-in coolers found in commercial and industrial kitchens. (Doc. # 18 at ¶ 3). Sometime in the Spring of 2014, SSI was referred to TRX and on June 26, 2014, TRX submitted a proposal to SSI for licensing TRX Enterprise™ and services related thereto. (Doc. ## 18 at ¶ 4; 50 at ¶ 5). The proposal stated:

> The following proposal covers these areas:
> 1) Investment for Software Licensing
>    a. 60 named users
>    b. Annual Support on ORACLE and TRX
> 2) Implementation Strategy and estimates
>    a. Map current procedures
>    b. Map TRX procedures
>    c. Determine custom software
>    d. Training via Phone and on site
>    e. Date Conversion
>    f. Going Live

(Doc. # 62-1 at 3).

The proposal laid out the cost for licensing TRX Enterprise™ and an estimate for the implementation thereof, which included training and data migration. (Id. at 4-5). The proposal also showed that customizations would be determined during the implementation stage. (Id. at 5).

SSI thereafter executed the Written Agreement to license TRX Enterprise™ and TRX accepted the Written Agreement through its course of conduct. (Doc. ## 43 at 13, ¶ 4; 44 at ¶ 4; 62-1 at 7-10). The Written Agreement allows TRX to terminate the Written Agreement, but SSI is not afforded the

same right thereunder. (Doc. # 62-1 at 8, ¶ 4). In addition, the Written Agreement limits the warranties provided to SSI to those enumerated in the Written Agreement. (Id. at 8, ¶ 6). The parties also entered into an Oral Agreement regarding the implementation of TRX Enterprise™. (Doc. ## 43 at 14, ¶¶ 8-9; 44 at ¶ 9; 50 at ¶ 8). On June 30, 2014, SSI paid TRX $107,500, which accounted for the first installment towards licensing TRX Enterprise™ and a $15,000 retainer for implementation services. (Doc. # 43 at 4, ¶ 15). About a month later, on August 26, 2014, SSI paid TRX the second and final installment of $92,500 towards licensing TRX Enterprise™. (Doc. # 43 at 4, ¶ 17).

Furthermore, under the Oral Agreement, a training company had to be set up as part of the implementation of TRX Enterprise™. (Doc. # 51-3 at 38:16-39:10). As to the establishment of the training company, TRX and SSI had shared responsibilities. See (Doc. # 51-5 at 230:8-10, 232:6-25).

Relatedly, the implementation team at SSI consisted of Phyllis Rowe, Cassie Blodgett, Andy McHugh, David M. Stafford, Jr., and Sue Grusell. (Doc. # 64-1 at 17, ¶ 9). In her affidavit, Rowe, the team leader at SSI for the implementation of TRX Enterprise™, stated that between July 13, 2014, and July 16, 2014, TRX sent representatives to SSI's

3

headquarters to meet with SSI's implementation team and to collect information. (Id. at 17, ¶ 11). Then, on August 12, 2014, through August 13, 2014, TRX sent the same representatives to SSI's headquarters to meet with SSI's implementation team and to demonstrate TRX Enterprise™. (Id. at 17, ¶ 12). A second demonstration of TRX Enterprise™ was set for December of 2014, however, the demonstration did not go well and Rowe thereafter asked for weekly telephonic progress meetings. (Id. at 17, ¶¶ 13-14).

The record is unclear as to whether SSI performed its duties under the Oral Agreement as to the establishment of a training company. For example, Rowe testified during her deposition that SSI did not owe TRX any information or work vis-à-vis the training company at the time SSI terminated the contract. (Doc. # 51-4 at 35:6-13). Similarly, Ammon testified during his deposition that SSI had completed one of its duties as to the training company; however, he was unsure if SSI actually informed TRX of that fact. (Doc. # 51-6 at 103:13-104:18). Notably though, later in her deposition, Rowe stated that, from TRX's position, SSI still had not completed all its duties as to the training company. (Doc. # 51-5 at 231:21-233:1). In addition, McHugh stated in his deposition that, as of the date that SSI terminated the contract, SSI

still owed TRX information necessary for the training company to be finalized. (Doc. # 51-3 at 232:8-233:11).

Then, on March 12, 2015, SSI sent a letter to TRX informing TRX that SSI was terminating the contract. (Doc. # 62-1 at 12-13). Thereafter, on March 23, 2015, TRX filed suit against SSI in the Sixth Judicial Circuit, in and for Pinellas County, Florida. (Doc. # 2). SSI subsequently removed the action to this Court on the basis of diversity jurisdiction. (Doc. # 1). TRX filed an Amended Complaint, which brings two counts: breach of contract (Count I) and declaratory relief (Count II). (Doc. # 30). SSI filed its Answer and countersued TRX for breach of contract. (Doc. # 43). The parties have each moved for summary judgment and the motions are ripe for review.

## II. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, Fla.,

344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing Augusta Iron & Steel Works, Inc. v. Emp'rs Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)). However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981).

Although both parties seek summary judgment as to Count II of the Amended Complaint, "each side must still establish the lack of genuine issues of material fact and that it is entitled to judgment as a matter of law." Chao v. Tyson Foods, Inc., 568 F. Supp. 2d 1300, 1305 n.1 (N.D. Ala. 2008) (citing Chambers & Co. v. Equitable Life Assur. Soc'y of the U.S., 224 F.2d 338, 345 (5th Cir. 1955); Matter of Lanting, 198 B.R. 817, 820 (Bankr. N.D. Ala. 1996)). "The fact that both parties simultaneously are arguing that there is no genuine issue of fact . . . does not establish that a trial is unnecessary thereby empowering the court to enter judgment as

7

it sees fit." 10A Wright, Miller & Kane, Federal Practice and Procedure § 2720, 327-28 (3d ed. 1998). The Court, therefore, will consider each Motion independently. Meridian Constr. & Dev., LLC v. Admiral Ins. Co., 105 F. Supp. 3d 1331, 1338 (M.D. Fla. 2013) (stating, "with cross-summary judgment motions, consideration of each motion must be undertaken on its own merits with inferences drawn in favor of the nonmoving party on each motion"); Chao, 568 F. Supp. 2d at 1305 n.1.

## III. Analysis

The threshold issue this Court must decide is whether the parties entered into two agreements that should be read independently of each other or whether the two agreements should be read together as one single contract. After careful review, the Court determines that the Written Agreement and the Oral Agreement should be read as constituting one contract.

"Under Florida law, where two or more documents are executed by the same parties, at or near the same time and concerning the same transaction or subject matter, the documents are generally construed together as a single contract." Clayton v. Howard Johnson Franchise Sys., Inc., 954 F.2d 645, 648 (11th Cir. 1992); J.M. Montgomery Roofing Co. v. Fred Howland, Inc., 98 So. 2d 484, 486 (Fla. 1957)

(stating "where an agreement is evidenced by two or more writings, the writing must be construed together" and noting that the instruments do not necessarily have to be executed at the same time) (citation and internal quotation marks omitted); Dodge City, Inc. v. Byrne, 693 So. 2d 1033, 1035 (Fla. 2d DCA 1997) (stating "[w]hen the parties execute two or more documents concurrently, in the course of one transaction concerning the same subject matter, the documents must be read and construed together").

Upon review of the Written Agreement and Oral Agreement, the Court determines that the Agreements are to be read as one contract. Both the Written and Oral Agreements stem from the same proposal. (Doc. # 62-1 at 3-6). Although the Written Agreement does not refer to the Oral Agreement, by the same token, the Written Agreement does not contain an integration clause. (Id. at 7-10). In addition, the Written and Oral Agreements were entered into by the same parties and relate to the same subject. See (Id. at 25-26, 28 (stating, "they purchased the whole thing. They purchased the license agreement, the licenses and then the promise of enhancements, if you will, that are – will be defined as defined in our presentation.")).

With respect to whether the Agreements concern the same transaction or subject matter, the relation between the Written and Oral Agreements is of some consequence. If the Agreements are interrelated, this would weigh in favor of finding the Agreements to be one contract. In contrast, if the Agreements are distinct, that would weigh against finding the Agreements to be one contract. Thus, the position the parties have adopted as to whether the Agreements are interrelated is noteworthy. Unfortunately, the parties' respective positions do not tell the Court much.

To begin with, the Court notes that SSI submits TRX should be estopped from contending the two Agreements are not interrelated given TRX's argument in opposition to SSI's motion to transfer. (Doc. # 68). However, SSI's argument was not raised until SSI filed its reply. As such, the Court declines to entertain SSI's submission on this point. See Allah El v. Avesta Homes, No. 8:11–cv–2192–T–33TGW, 2012 WL 515912, at *3 (M.D. Fla. Feb. 16, 2012) (stating "District Courts, including this one, ordinarily do not consider arguments raised for the first time on reply"); Park City Water Auth., Inc. v. N. Fork Apartments, L.P., No. 09–0240–WS–M, 2009 WL 4898354, at *1 n.2 (S.D. Ala. Dec. 14, 2009) (collecting cases).

To summarize the parties' respective positions, TRX argues the Agreements are related (Id. at 15, ¶ 16) but should not be read as a single contract because they do not concern the same subject (Doc. # 66 at 8), whereas SSI argues the Agreements are distinct (Doc. # 43 at 15-16) but should be read as a single contract because they are interdependent (Doc. # 62 at 23). To be sure, the Written Agreement concerned licensing the rights to use TRX Enterprise™ and the Oral Agreement concerned implementation and enhancements to that very same software. See (Doc. ## 18 at ¶ 8; 51-4 at 26:11-16). The two Agreements related to the same transaction and subject matter——SSI's use of TRX Enterprise™. See J.M. Montgomery Roofing Co., 98 So. 2d at 486 (finding two contracts to be "part and parcel of the **same general transaction** . . .") (emphasis added); Leon F. Cohn, M.D., P.A. v. Visual Health & Surgical Ctr., Inc., 125 So. 3d 860, 863 (Fla. 4th DCA 2013) (finding two contracts "dealt with the same **overarching transaction** and should be construed together as a single contract") (emphasis added). Because the Written and Oral Agreements arose from the same proposal, were entered into by the same parties, and concerned the same subject matter, they should be construed as one contract.

The analysis does not end there, however. The Court must next determine whether there was a material breach of the contract and, if so, which party breached first. See Beck v. Lazard Freres & Co., LLC, 175 F.3d 913, 914 (11th Cir. 1999) (stating, "[t]he elements of a breach of contract action are (1) a valid contract; (2) a material breach; and (3) damages" (citing Abruzzo v. Haller, 603 So. 2d 1338, 1340 (Fla. 1st DCA 1992)); Dickerson v. Cmty. W. Bank, No. 8:10-cv-729-T-17AEP, 2015 WL 4879353, at *16 (M.D. Fla. Aug. 14, 2015) (stating, "[i]n addition, in order to maintain an action for breach of contract, a claimant must also prove performance of its obligations under the contract or legal excuse for its nonperformance"). "A material breach occurs only when an injured party has sustained a substantial injury due to the breach." Border Collie Rescue, Inc. v. Ryan, 418 F. Supp. 2d 1330, 1343-44 (M.D. Fla. 2006). To answer the question of whether a material breach occurred and, if so, which party breached first, the Court must know the terms of the contract as a whole, the terms of which are those memorialized in the Written Agreement and those of the Oral Agreement.

SSI does not argue that TRX breached the Written Agreement portion of the contract. (Doc. ## 43 at 15, ¶ 16; 62 at 5; 68 at 5 (stating, "[t]o be clear, SSI contends that

12

TRX substantially breached the implementation contract and that the licensing contract[, i.e., the Written Agreement,] was dependent upon or interrelated with the Ancillary Services[, i.e., the Oral,] Agreement")). Thus, the crux of the matter is which party first breached the Oral Agreement portion of the contract.

To determine whether there was a material breach of the Oral Agreement portion of the contract, the Court must first know the terms of the Oral Agreement. However, the record does not contain much in the way of what the terms of the Oral Agreement were. What the record does reflect is that the parties agreed a training company would have to be established. (Doc. ## 43 at 16, ¶ 18(a); 44 at ¶ 18(a)).

Under the Oral Agreement, and specifically as to the establishment of a training company, the record shows that TRX and SSI had shared responsibilities. See (Doc. # 51-5 at 230:8-10, 232:6-25). However, there is a genuine issue of material fact as to whether SSI fulfilled its obligations before terminating the contract with TRX. For example, Rowe testified during her deposition that SSI did not owe TRX any information or work vis-à-vis the training company at the time SSI terminated the contract. (Doc. # 51-4 at 35:6-13). Yet, later in her deposition, Rowe stated that from TRX's

position, SSI still had not completed all of its duties as to the training company. (Doc. # 51-5 at 231:21-233:1).

Furthermore, Ammon testified during his deposition that SSI had completed one of its duties as to the training company but that he was unsure if SSI actually informed TRX of that fact. (Doc. # 51-6 at 103:13-104:18). For his part, McHugh testified that as of the date SSI terminated the contract, SSI still owed TRX information necessary for the training company to be finalized. (Doc. # 51-3 at 232:8-233:11). That SSI's president, and now CEO, stated it was his "position that both sides had issues . . . . No one's lily white in [sic] either end of," (Doc. # 51-1 at 13:19-20), only serves to highlight the importance of answering the question of which party breached first. But, that is a question which the Court cannot answer at summary judgment given the issue of material fact discussed above.

Given this genuine issue of material fact, the Court cannot grant either motion for summary judgment, because each motion turns on whether there was a material breach of the Oral Agreement portion of the contract and, if so, which party breached first. As shown above, the record is unclear as to that question and the resultant genuine issue of material fact precludes summary judgment.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Plaintiff TRX Integration, Inc.'s Consolidated and Abridged Motion for Summary Judgment (Doc. # 58) is **DENIED.**

(2) Defendant Stafford-Smith, Inc.'s Motion for Summary Judgment (Doc. # 62) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 23rd day of February, 2016.

*/s/ Virginia M. Hernandez Covington*
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE